The next case is 17-4125 Park v. First American Title. Mr. Mansfield, you may proceed. Thank you, Your Honors. May I please support and counsel Robert Mansfield on behalf of the appellant, Dr. Park. We're here today on the issue of the interpretation of the statute of limitation for a first-party contract of insurance since Utah code annotated 31A-21-313. Let me give you a little background as I may, because I think in order to determine the applicability of the statute of limitation for a contract of insurance, I think you need to look at what the policy of insurance actually covers and what's provided for in that policy. First, Dr. Park purchased a policy of title insurance from First American in conjunction with a mortgage, a deed of trust, a loan he was making on some real estate. Was that a purchase money situation or was it a loan that was not related to the purchase? That's not in the record. I don't believe it was purchase money. I think it was just a loan that was being taken by the borrower. Dr. Park was the lender. Thank you. Policy was, in fact, issued by First American, and that's a policy that's at issue in this matter. In 2011, Dr. Park was served with a quiet title action claiming that the trustors on the deed of trust did not, in fact, own the property and was given a security for the promissory note from Dr. Park. Dr. Park undertook to represent himself in that matter and did represent himself pro se through the conclusion of the trial. Notice was given to First American title in 2013, and that's in the appendix, I believe it was number 54. So the loss ensued upon what, service of the complaint under your theory? No, no, no. That's First American's theory is that the loss occurred upon Dr. Park receiving notice of the alleged claim. Their theory would be when he served. When he served. Our theory is that there is no loss until the final determination by the court in the quiet title action, which is not until December of 2015. Does the loss occur after, at that point, or when it's confirmed on appeal? Well, let me jump directly to that, if I may. And again, I think it's important to determine. The language under the statute of limitation that's really at issue here is what does inception of the loss. In order to determine what the loss is, I think you have to look at what the coverage is afforded by the policy. And if you go directly to the policy and go to the express terms of the policy, and if you look at Section 8 of the policy, which is an appendix on page 57, that section is specifically entitled limitation of liability. And in subsection B, it says, in the event of any litigation, including litigation by the company or with the company's consent, the company, and here the company is first American title, the company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction and disposition of all appeals therefrom, adverse to the title or interest of the insured or to the lien of the insured mortgage as insured. Under the express terms of the policy, there's no liability until a final determination by a court. There's no liability under that coverage. Under that coverage. Now, let me address that a minute. So you have a couple of different provisions here. First American argues extensively in their brief about a duty to defend. There is no requirement that Dr. Park tender the defense to first American and have them step in and undertake the defense as suggested by first American in their brief. If you look at paragraph. Maybe there's no duty that way, but it may be part of their argument, which really wasn't fully developed here, I'll acknowledge that, that by not getting notice, they were prejudiced. And presumably, if we'd gotten our own attorneys, we could have won the case. That's not before us now, but it would be relevant to that. That may be their argument. I mean, that kind of goes to a second argument of first American, that this court should affirm the dismissal based on other grounds, such as that Dr. Park was the first to breach because he didn't give the required notice in a timely fashion. But again, if you look at the specific provision of the policy, it's, you know, that only really matters if the company is, and this is, again, I'm quoting from section four, if the company is prejudiced by the failure of the insured to furnish, actually cooperation, excuse me, paragraph three is the notice, again, provided, however, that failure to notify the company shall in no case prejudice the rights of any insured under this policy unless the company shall be prejudiced by the failure, and then only to the extent of that prejudice. And that's what I was referring to. Yes. It could be the failure to ask them to represent Dr. Park might be part of an argument that they were prejudiced. That's not really before us now. That's not before us, and that's certainly not something to be cited on a motion to dismiss, which is what we're here on now is a trial court's granting of a motion to dismiss for violation of the statute of limitations. You know, that obviously has not been developed and would be developed through the discovery process. Let's go where the district court's logic was that the filing of the lawsuit created a cloud on the title. Yes. Correct. And so one of the risks that the title insurance policy insures against would be defects to the title and, you know, including a cloud in the tile created by the filing of a lien or, in this case, the filing of a complaint contesting ownership, right? Correct. And, you know, as I understand what the district court did, he said, well, there's a risk that's insured against called unmarked ability of title. The lawsuit challenges the marked ability of title. Claim arises under kind of a more traditional insurance theory. Here we're stuck with inception of loss. Yes. Which is kind of a different lingo. When would a loss under marked ability of title occur? Okay. Let me address that, if I may. So, first of all, if you look at the case law that everyone cited in this case, and there is a small number of cases that are referred to in our briefs, they all involve an actual tangible loss. Every single case that's been cited has that tangible loss. They all kind of have a precursor event, with the exception of Anderson, which involved a theft of property. But they all kind of have a precursor event. Here, I think the precursor event that doesn't create liability to First American is the cloud on the title, the filing of the client title. Why wouldn't that start the clock ticking? Well, it doesn't start the clock ticking because of, if you, and let me get to the provisions, if I may. I think that certainly would then start, or give Dr. Park the right under paragraph four, upon written request by the insurer to request that they provide a defense of that action. But it doesn't create liability, because first you have, and you've got to look at the entirety of the contract. This is contract interpretation. You have to consider all the provisions, and you can't come up with a construction that renders any provision superfluous. And I think the trial court's reading of that does. First, under section four, when you first receive notice of unmarketability, an allegation on the cloud of the title, that would cloud the title, you have to give the notice to First American. And that's under section four. Let me ask a hypothetical at that point. Let's shift gears a little bit and say I've committed an act of defamation. I've defamed you. Okay. I've made a statement, public statement, that meets the elements, potential elements of a defamation clause. If we, when would the clock start ticking on your obligation to let the insurance company know that you've been defamed? Well, I think that would be akin to the loss of the property. Again, you'd have to go to the actual policy to see what's being covered. And that's why it's important to really focus on the policy here as to what is the extent of the coverage being afforded by First American. A defamation action would be a cloud on your reputation. Yes, it would be a cloud on your reputation. That's a loss, isn't it? It may not be monetized yet, but it's a loss. If the policy said that it defines the loss as clearly the cloud on your reputation, then yes, I think that would be the inception of the loss. But that's not what this policy does. Again, well, it seems to me that the question and the answer both proceed under general liability insurance type insurance policies. This policy is a title insurance policy, which in traditional days of when I started practicing law was basically a substitution for the examination of an abstract to satisfy yourself as to the status of title. Correct. And here, I think it was prescient of Dr. Park to actually obtain title insurance to insure the title at the time of his loan. I dare say probably not very common. But the nature of title insurance is quite different from general commercial, general liability policies where basically you're buying partly to defend yourself. Here, as you, I think, point out in the language, the loss is different because it is the inception of the loss. And so I think it helps to focus on those words. Yes, if you look at the inception of the loss, and in order to determine the inception of the loss, you have to determine what is covered under the policy. Now, the coverage is the title is the assurance that the title is as stated. Yes. That whoever signed that deed of trust was in fact a valid owner. Now, what cases do you have that might give us some guidance as to whether inception of the loss in a breach of title, not breach of title, but a claim under a title policy is as you stated it? I can't find a single case. It goes either way. So this is a case of first impression? As far as I know it is. I have not found a case, nor has First American cited any case like that. You say a first case. No cases. You mean under the language inception of loss? Inception. There are clearly cases of title insurance that have been argued before the court. But as far as the language of inception and loss as it applies. See, I'm not sure. See, I don't understand what inception of adds. In general, once you have any claim, any loss that you could recover from, your claim accrues. Yes. I don't understand what the words inception of add. I don't know that it adds anything else. And if that's the case, I don't see why cases under different statutes of limitation that don't have the language inception of wouldn't be relevant. Are there any cases under those, under other statutes? I'm not aware. I'd be certainly happy to provide some, go back and look and provide some supplemental authority, but I am not aware of it. If Dr. Park had attended his defense to the insurance company and they denied responsibility, they denied his claim, does that trigger a loss? Then you would have a loss because they have a benefit of the policy. And you're going back to Section 8? Go back to them. Are you going back to Section 8 at that point? No, Section 4. Section 4. Dr. Park has the ability to submit a written request to defend him. If they don't defend him, then that would be a breach of the policy and that would be an inception of the loss. But at no time did Dr. Park. Inception of a loss under those provisions, under the duty to defend. Under the duty to defend. But here we're not, the duty to defend was never invoked. Dr. Park not once said, please defend me. Why he didn't, don't know. That's not in the record. We weren't to that point yet. Why haven't you referred to Section 7? Well, and I'm just, I've been trying to get here. Because Judge Simcom has asked about monetized. Yes. And as I read the policy, it has to be monetized. Yeah, it does. And Section 7 says, this policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described. So you read that in conjunction with Section 8, which requires a final determination by the court in connection with Section 5, which is a proof of loss, a proof of claim after a loss or damage. That's got to be different than the notice under Section 3, which is required. Under Section 7, you're not talking about insurance, liability insurance of any type. What you're talking about is an indemnification. Yes. That's what this is. This is an indemnity policy. I notice my time is almost up. I would like to reserve some time for rebuttal. You may. Thank you. Thank you. May it please the Court, good morning. My name is Mark Morris. I represent First American Title Insurance Company. Right. My company insures title. All right. So that's a very good place to start. Your company insures title. I go to Judge Tymkiewicz. I'm his gardener at Tymkiewicz Acres. Okay. If you were sitting in the courtroom. I do. And I say to my employer, say, hey, Judge, I've really enjoyed tending the roses on your Tymkiewicz Acres, and I would like to buy your house. And so I go to the bank, and the bank says, sure, we'll lend you money to buy that land. And I want to insure, but we want to make sure that Tymkiewicz owns that land. Because if he doesn't own it, then we're not going to put our good money out to have you buy those acres. So I go, I buy insurance from your company. I buy Tymkiewicz Acres. It turns out somewhere later that Tymkiewicz has gone wrong, and he didn't really own that land. I'm a sketchy character. Yeah. It's sketchy. In fact, it's owned by. Me. By. Parts. Parts Unbounded Enterprises. All right. Limited. So now I am going to be indemnified either as a buyer, or my bank is going to be indemnified as a lender. So they're going to get lender's policy as well, in case Tymkiewicz doesn't own that land. Until a court says Tymkiewicz is not the owner of that land, the presumption is, under the warranty provisions of the deed, whatever, that he owns that land. Now, when have I incurred a loss? Let's forget inception, and let's go to Judge Hartz's view of this, and say, when was the loss incurred? A loss cannot be incurred or declared until some court says it is Hartz Enterprises that owns this land rather than Tymkiewicz. Correct? No, Your Honor. Why is that not correct? It's not correct. You're not going to pay out money on a hope and a prayer that maybe Tymkiewicz didn't own it. Money. You want to want proof, right? Well, paying out money isn't the only right that the insurance company reserved to itself here. If you look at Section 6 of the policy, the insurance company has the right to pay so to make clear, in your example, Your Honor, Dr. Park is in the place of your lender. Right. He's not you. So now he's lending. But he independently obtained lender's coverage. Yes, and that's what this is. He didn't buy it. He didn't get lender's policy to defend him in some lawsuit. He bought it to assure himself that whoever he was lending the money to on a deed of trust actually owned the land. And the bargain with your lender is, lender, if you get word that the title that we have guaranteed in this or insured under this policy, if you get word that Judge Hartz is making a claim and clouding the title that Judge Tymkiewicz has on that property, number one, under Section 2, you need to let us know immediately. Tell us now. Why? Because, and I want to clarify a very important thing under Section 4. Mr. Massfield's correct. The Section 4A says, upon written request, the title company will come in and defend the lender. However, under 4B. Well, but just a second. Where is upon written request in this? It says here, upon written request, Section 4A of the policy, upon written request by the insured, which is your lender. Right. And subject to the options, et cetera, the company, the insurer, at its own cost and without unreasonable delay will provide a defense. Right. Now, upon written request means what? Well, it's irrelevant here because he never made the written request. Well, it's not. Upon written request means. Not so quick. Upon written request means that the lender has the discretion to enforce that provision of the policy or not to enforce it, because he has the choice to decide whether to give you written notice for purposes of your paying for the defense. If he doesn't, I'm afraid he's out of luck in terms of the terms of whether he's going to be reimbursed for that cost. But the indemnification aspect of the policy, which we were talking about, surely no duty to indemnify occurs until a loss has been both declared, affirmative and concluded, and liquidated. Indemnity isn't the only obligation here. Section 4, so number one, getting back to if a written request to defend were made, the company shall. There's no discretion there. Section 4 says the company shall provide a defense. But critically, Section 4B says that the company shall have the right at its own cost to institute and prosecute any action or proceeding or do any other act which in its opinion may be necessary to establish the title. So by not giving my company timely notice that Judge Hartz was attacking Timkovich Acres and title thereto, First American lost the ability to do exercise his contractual right, even if the lender isn't saying come and defend title against Judge Hartz. But doesn't Peasant Park breach Section 4? And then wouldn't that breach be subject to the prejudice requirement under Utah law? Yes, and that's frankly a side issue today. I'll spot to that breach, but we're not talking about that breach here. I don't think we're talking about. I only highlight the failure to notify, not as a way of an alternative theory to prevail in the case. Because I agree, frankly, the showing of prejudice would be down the road if we were litigating the case. In most of these cases there would be prejudice. But under Section 6, here's what the title insurance company bargained for when it entered into this agreement with Dr. Park. It had the option to go in. It could have instituted an action to clear title all on its own without getting a request to defend. But it also could have gone to Dr. Park and said under Section 6, let's just pay off the loan balance. I don't know how much money the Lambs had paid Dr. Park in the six intervening years from the time he paid, made the loan until the time judgment was entered. But the title company under Section 6 could come in and pay the note. Or it can go to the plaintiffs who were attacking the Lambs' title and said, look, what does it take to get you, Judge Hartz, to lay off Timkovich Acres and go away from your claim? Let me ask about that hypothetical. If all the payments on the note were current, how has Dr. Park suffered any loss at that point? He hasn't. All is being guaranteed. I'm sorry. That's important to the statute of limitations issue because I don't see how the statute of limitations could begin to run here, regardless of the title action, as long as the note is current. And we have nothing in the record that I'm aware of about when the note went into default. I would think that in itself would preclude a statute of limitations defense. If we were talking only about money, you'd be right. But we're not. We're talking about title. And Judge Timkovich's example of the defamation claim is right on point. Except for Section 7 of the contract. And except for the fact that it's predicated on general liability principles and not an indemnification agreement. But the limitation on monetary liability, as we pointed out on our brief, is a side issue here. Why? Why isn't that? That's the only provision. You could have had a defamation protection in this insurance policy. You could have all sorts of things in the policy. You have a duty to defend, indemnification, who knows what else you could have. The only thing he's seeking redress from you is on the indemnification clause. And that claim did not accrue under the terms of the policy, it seems to me, until there was an appellate decision giving title, depriving the borrower of title. So to embrace that theory, this Court will sanction them. Someone who doesn't abide by their obligations to provide notice, doesn't give the title insurance company the opportunity to go in and defend title before we ever get to writing checks. Right, but it wouldn't preclude your defense to the claim under those provisions of the policy that say, if you don't give us notice and we're prejudiced by it, then we don't owe you a penny. So your argument is a strong one, but it doesn't go to the limitations period action claim. It goes to your defense of failure of notice and resulting prejudice. That's clearly a problem for the title company when you're not notified, and you might have a very good claim of prejudice, but that's not the issue here. And so that begs the question, when did this loss begin? At what point was its inception? Right, and so what the policy says is you can't recover anything from us until there's an appellate termination after a judgment denying you title. That's what the policy says. It didn't have to be written that way. It could have been that you can, it's not just indemnification, but if there's a cloud on your title, you can seek relief from us. But this says you can't under that policy provision. Well, I'm really asking a question. I'm not as in concrete as I probably sound. So let me know what's wrong with that. What's wrong with that is that the Utah legislature stated that your time to bring a claim against your insurance company begins at the inception of your loss, and you've got three years to do it. And what loss? Shouldn't it be the loss that's covered by the policy? The loss that's among the covered risks under Section 2 of the policy are the very unmarketability in title that Justice Timkovich was talking about at the beginning of Mr. Mansfield's argument, that the title has been attacked, and the insurance company has an opportunity to come in and fix that without writing any checks to defend or institute an action or to pay off a note or to settle up with the other party. Is your strongest argument in your view that Section 6 opportunity to settle a claim then? My strongest argument, Your Honor, is that under Utah law, under the Anderson v. Beneficial case, 1968, 50 years ago, Judge Henroyd said inception of loss, the language, is crystal clear. And in 1990, the U.S. District Court in the Canadian indemnity case said that that statute starts running at the first instance, when you're first aware of any loss. I'm sorry. Go ahead. And so in following through, this Court didn't even write an opinion. When the appeal came up from that in 1992, Judge Seymour said not worth even writing an opinion about. It's clear there was no error here. So the critical case to look at here is Tucker. But in that case, what's bothering me here is I'm not aware of any statute of limitations that starts to run before the plaintiff could file a claim that's recoverable. And under the indemnification terms of this policy, he can't file a claim until there's a judgment causing him to lose title. He could file a claim under a different provision of the policy, but he's not seeking recovery there. So you're saying that as soon as there's a cloud on the title, he needs to file suit because the limitations period starts running. And yet you would ask that be thrown out. You'd have every right to throw out that claim because he's not entitled to recover under the policy. One penny at that time. That's unique to my knowledge. And I invoke what Mr. Mansfield told you earlier. You need to look at the entire policy. Okay. And not just Section 7, which is a limitation of liability, but the rights that the company bargained for here and the opportunities that it bargained for to not write a check, but fix title, to make sure that Judge Timkovich owns Timkovich Acres. The opportunity to do that was gone before he ever filed suit. Six years went by from the time that he learned there was an attack on title. Actually, seven years went by. Let me give you this scenario and see what's wrong with it. I've tried to settle a lawsuit, and certain representations have been made. And I am dictating the – I'm sitting in my office dictating a contract. I say, you, the settling party, agree to indemnify and hold me harmless if I pay you X. And if I am – that's one agreement. He says, well, okay. And I said, you've got to defend me if there's a challenge. He said, well, that's a different thing. Let's negotiate about that. He says, okay, I'll agree to defend you. That's separate consideration. But I may not want you to defend me, so I reserve the right to say, upon written request, you shall defend me. I choose not to do it. Now, there's the third element here, and that if I have to pay money under the indemnification agreement, I will indemnify you for that amount. Why is a merger of these three into one document make, number the second provision, the right to defend, the right to seek defend, become a sword rather than a shield because of the way you interpret the policy? In this case, the agreement. If I understand Your Honor's question, I'm out of time. No, go ahead. Thank you. If I understand your question, it is, why does the insurer's failure to abide by a number of obligations he had. Wait a minute. Not so quick. What obligation? I said, I, on written request by me, you shall defend me. Okay. And I'd elect not to request you to defend me. Maybe I think my ho-bunk lawyer is better than your lawyer, or maybe I'm so egotistic that I think I don't even need a lawyer. I'd rather defend myself. I don't trust lawyers. Whatever reason, I choose not to invoke that provision of my agreement. Why does that all of a sudden give you the right to rescind the fundamental purpose of my agreement, which is to seek indemnification? I don't have the right to rescind that. But you have an obligation to let me know what's going on. Because you might be prejudiced as a ho-bunk lawyer, but that's the whole discussion we've been having. I understand that. But Utah law, Utah legislature in its wisdom has said insurance companies need to know within three years that something's brewing, that a loss has begun. It might not be monetized. I might get hit in an intersection walking outside the court here. I don't know what my back surgery is going to cost for two years. But my claim occurs, the inception, when I get hit out in that crosswalk. And the monetization of it could come much later. But my clock starts ticking now when I get hit. Thank you. Thank you, counsel. I appreciate your argument, your patience. I appreciate being here in this beautiful courtroom. It is. You're lucky to be here. It's a privilege. We love to sit here, too. Mr. Mansfield, you have a little bit of rebuttal. Would you please give him 60 seconds? Thank you. The fundamental issue here is a loss has to be a covered loss. They don't insure against mere unmarketability. They insure against a loss of a right. In this case, the indemnity and insurance is for, in this case, the lambs, that they own the property. That is when the loss occurred, is when that was held to be invalid. The arguments with Section 4 and Section 6 may go to their prejudice, arguments of prejudice. Dr. Park, the record is clear so far. Dr. Park gave notice in 2013, two years before the final determination of lack of the validity of the deed of trust. There's nothing in the record as to First American doing anything to step up and say, hey, let us come. Let us institute this action. Let us protect marketability. Let us do anything. There's nothing about that. Before you sit down, the definition of unmarketability of title refers to an alleged matter affecting title. Yes. That seems to be contingent. Yes. Why would that be a loss, at least under the merchantability? Clearly. That's a cloud. Yes. It's alleged, and it's a matter. Clearly. The quiet title action is an allegation that the lambs, who were the trustors under the deed of trust, did not have the authority to grant the deed of trust on the property. But again, the policy, you've got to look at the policy and what's covered. Section 7 says actual and monetary loss. What's the marketability of title section 4? Why does that even matter? The duty to defend. Is it relevant to the duty to defend? It's relevant to the duty to defend. Because if Dr. Park submits written request for the defense, they have to give it because of an allegation of unmarketability. Dr. Park did not take advantage of that benefit under the policy. What he's seeking, and the primary purpose of the policy, is the indemnity against the lambs not having the authority to grant the deed of trust. I see that my time is up. Any additional questions? Thank you, counsel. I appreciate it very much. Thank you. I understand your arguments. Well done. Counsel are excused, and the case shall be submitted.